IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ORLANDER LAWSON,                          )
                                          )
    Plaintiff,                            )
                                          )
    v.                                    )    Case No. 1:25-cv-1931 (RDA/WBP)
                                          )
DAVID J. GOTTFRIED, *et al.*,[1]          )
                                          )
    Defendants.                           )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants David J. Gottfried and Todd Blanche's ("Defendants") Motion to Dismiss (the "Motion") the Amended Complaint filed by Plaintiff Orlander Lawson ("Plaintiff"). Dkt. 20. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion together with the Amended Complaint (Dkt. 13-1), Defendants' Memorandum in Support (Dkt. 21), Plaintiff's Opposition (Dkt. 25), Plaintiff's Corrected Opposition (Dkt. 27-3), and Defendants' Reply (Dkt. 26), this Court GRANTS the Motion for the reasons that follow.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Todd Blanche has been substituted for Pamela Bondi.

1

## I. BACKGROUND[2]

### A. Factual Background

Plaintiff was born in 1961. Dkt. 13-1 at 60. Plaintiff began working at the FBI in December 1985. *Id.* On March 5, 2019, Plaintiff received a job offer for a Staff Operations Specialist position, contingent on successful completion of the Staff Operations Specialist Basic Training ("SOSBT") class. *Id.* At that time, Plaintiff had worked for the FBI for approximately thirty-three years. *Id.* at 47.

On April 14, 2019, Plaintiff arrived at the FBI Training Academy to attend SOSBT. *Id.* at 60. During the training, Plaintiff participated in a "mandatory orientation icebreaker," requiring trainees to silently arrange themselves by birthdate. *Id.* ¶ 1. The facilitator announced that Plaintiff was the oldest trainee among all programs. *Id.* Peers responded with remarks such as, "[w]hew, I'm glad I wasn't the oldest student." *Id.* Plaintiff does not believe the facilitator intended offense, but she found the episode deeply embarrassing. *Id.*

On April 24, 2019, during Plaintiff's first day of legal instruction, Defendant David Gottfried, an FBI Assistant General Counsel and the course instructor, asked the class which students had raised teenagers, to which Plaintiff responded by raising her hand. *Id.* ¶ 2; *id.* at 45. Gottfried then referred to Plaintiff as a "tired, worn out, beaten down, old woman." *Id.* ¶ 2. Following this incident, Plaintiff experienced anxiety and difficulty concentrating in her classes. *Id.* ¶ 3. Plaintiff passed her first exam in another instructor's class, but subsequently failed her first legal exam, briefing exam, and writing exam. *Id.* These academic challenges arose

---

[2] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"shortly after" the incident with Defendant Gottfried, and Plaintiff attributes these academic challenges to the emotional distress she experienced from the incident. *Id.* Plaintiff later passed her legal re-test and briefing exam. *Id.* ¶ 4. Her final writing exam was scheduled for the same day that her employment ended; thus, she did not complete the program. *Id.*

On May 13, 2019, Plaintiff met with Gottfried in his office to review her test results and ask questions. *Id.* at 40, 60–61. When Plaintiff asked if she could write down the questions she had missed, Gottfried advised that she could not write down the questions because "they don't want the questions disseminated outside the Academy." *Id.* at 40; *see id.* at 61. Gottfried and a third party ensured at that time that anything Plaintiff removed from that setting followed the rules relating to tests. *Id.* ¶ 13. A couple days later, Gottfried allowed students to review test scores in the SOSBT classroom, and, on the advice of another student, Plaintiff wrote down some of the questions. *See id.* at 40–41. Plaintiff did not believe this was forbidden because she was in a "secure area" and she did not understand the FBI's Academy Code to specifically forbid it. *Id.* at 40–42. Gottfried saw that Plaintiff had written down the questions, which led to Plaintiff undergoing a suitability review. *See id.* at 40–42, 47.

On May 20, 2019, the Trainee Review Board ("TRB"), comprised of Renae M. McDermott and others, met with Plaintiff regarding the incident. *Id.* at 47. The TRB recommended that Plaintiff be dismissed from training and not recommended for continued FBI employment. *Id.* ¶ 14; *id.* at 56–57. The Assistant Director of the Training Academy, Donald Always, concurred with this recommendation on May 21, 2019, at which point Plaintiff was notified of the decision. *Id.* at 56; *id.* at 47. After "considering her options," Plaintiff "felt compelled to retire from the FBI, as this was the only option that would allow [her] to receive a monthly income." *Id.* at 47.

3

On June 4, 2019, Plaintiff contacted the FBI's Equal Employment Opportunity ("EEO") office. *Id.* ¶ 5; *see also id.* at 39, 44. She alleged that Gottfried's remarks during the April 24 class constituted age discrimination. *Id.* at 44–48. During the investigative phase of her complaint, Plaintiff alleges that she learned that Agency officials had accused her of "cheating and lying." *Id.* ¶ 5. When she sought clarification from her assigned counselor, Plaintiff was told the accusation referred to her not following instructions. *Id.*

On June 10, 2019, Plaintiff was informed that the TRB had specifically concluded that Plaintiff had admitted to writing down questions and partial answers during the remediation session, which they found was a violation of graduation requirements. *Id.* ¶ 12.

On June 19, 2019, Plaintiff retired from the FBI.[3] *Id.* at 39, 44, 47. Plaintiff alleges that "the Agency disseminated a termination statement to at least 75 individuals, repeating the claim that Plaintiff admitted to knowingly violating policy during her remediation session with Attorney Gottfried." *Id.* ¶ 15.

On July 15, 2019, Plaintiff was informed of her right to file a formal administrative complaint, and she filed a formal complaint on July 29, 2019, raising the same issues and again alleging age discrimination. *See id.* at 39–42. Plaintiff received notification of her right to file a federal action on May 19, 2025 from the Equal Employment Opportunity Commission (the "EEOC"). *Id.* at 6.

### B. Procedural Background

On October 31, 2025, Plaintiff filed the instant action pursuant to the Age Discrimination in Employment Act ("ADEA") against Defendant Gottfried and Pamela Bondi, the then-serving

---

[3] Although Plaintiff claims she was terminated in her Amended Complaint, she attaches several exhibits that show she retired; thus, she can only recover if she can establish constructive discharge. *See, e.g.*, Dkt. 13-1 at 47.

United States Attorney General. Dkt. 1. On December 29, 2025, before Defendants' responsive pleading was due, Plaintiff moved to amend her complaint. Dkt. 13. Defendants formally consented to the proposed amendment on January 12, 2026. Dkt. 17. On January 14, 2026, U.S. Magistrate Judge William B. Porter issued an Order deeming the Amended Complaint filed as of that date and directing Defendants to respond within fourteen days. Dkt. 19.

The Amended Complaint adds as a defendant Lindsey Halligan, the Eastern District of Virginia's former Acting United States Attorney and Special Attorney, and continues to assert claims under the ADEA. Dkt. 13-1. The Amended Complaint raises challenges to the "[t]ermination of [Plaintiff's] employment," as well as claims of "[h]arassment," "[h]ostile [w]ork [e]nvironment," and "[d]efamation of [c]haracter." Dkt. 13-1 at 3, 5.

On January 28, 2026, Defendants filed their Motion to Dismiss. Dkt. 20. On February 3, 2026, this Court notified Plaintiff of Defendants' Motion and Plaintiff's right to reply within twenty-one days pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Dkt. 23. On February 26, 2026, Plaintiff filed her Opposition. Dkt. 25. On March 5, 2026, Defendants filed their Reply. Dkt. 26.

On March 11, 2026, Plaintiff filed a Motion for Leave to file Corrected Response in Opposition and attached her proposed Corrected Opposition. Dkts. 27, 27-3. On March 25, 2026, Defendants filed a response, noting that they "do not oppose allowing Plaintiff to file" her Corrected Opposition. Dkt. 29.

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## III. ANALYSIS

Plaintiff's Amended Complaint asserts claims under the ADEA, challenging the "[t]ermination of [Plaintiff's] employment," as well as "[h]arassment," "[h]ostile [w]ork [e]nvironment," and "[d]efamation of [c]haracter." Dkt. 13-1 at 3, 5. Defendants argue that Plaintiff's claims are time-barred and that Plaintiff has failed to state any claim for relief. Dkt. 20. The Court will address each argument in turn.

A. Exhaustion

Under the ADEA, a plaintiff must file their complaint within 90 days of receiving a right-to-sue letter.  29 U.S.C. § 626(e).  "This ninety-day time period has been strictly construed and, absent waiver, estoppel, or equitable tolling, a lawsuit filed in excess of the ninety-day period will be dismissed." *Davis v. Navy Fed. Credit Union*, 2012 WL 73233, at *5 (E.D. Va. Jan. 10, 2012), *aff'd,* 474 F. App'x 398 (4th Cir. 2012).  Here, Defendants argue that Plaintiff's allegations are all time-barred because she received notification of her right to sue on May 19, 2025, but did not file this action until October 31, 2025—165 days after she received notice.  Dkt. 21 at 6.  Plaintiff acknowledges that she failed to timely file her Complaint but contends that her error should be excused under equitable tolling principles.  Dkt. 9.

Federal courts extend such equitable relief sparingly.  *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990); *see also Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir. 1990) (noting that "[e]quitable tolling is a narrow limitations exception").  Equitable tolling is appropriate where (1) the plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass" or (2) "extraordinary circumstances beyond the [plaintiff's] control made it impossible to file the claims on time." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321 (4th Cir. 2011) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).  The Fourth Circuit has made clear that "a plaintiff's unfamiliarity with the legal process or h[er] lack of legal representation" are not sufficient bases to invoke the extraordinary remedy of equitable tolling.  *Harris v. Hutchinson*, 209 F.3d 325, 331 (4th Cir. 2000) (citing *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991)).  Ultimately, "any resort to equity must be reserved for those rare instances where—due to circumstances external to the

7

party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris*, 209 F.3d at 330.

Here, Plaintiff argues that equitable tolling is justified because, upon receipt of the EEOC notice on May 19, 2025, she attempted to contact her attorney, received no response, and then learned "through public sources" on August 9, 2025 (just over a week before her filing deadline of August 18) that her attorney had passed away in February 2025. Dkt. 9 ¶¶ 1–2. Plaintiff then alleges that she attempted to file a "Motion for Extension of Time to File Civil Action" on August 12, 2025, but learned that a complaint had to be filed before any extension could be considered. *Id.* ¶ 3. Plaintiff then asserts that, due to the federal government shutdown beginning on October 1, 2025, she was "uncertain about the operational status of the Clerk's Office and hesitant to forward documents and payment without confirmation." *Id.* ¶ 4. Plaintiff left a voicemail for "the Court" on October 8, 2025. *Id.* On October 10, 2025, Plaintiff again "contacted the Court to confirm its operational status and to obtain clarification regarding filing fee requirements." *Id.* ¶ 5. Plaintiff eventually filed her Complaint on October 31, 2025. Dkt. 1.

Considering the specific facts and circumstances presented here, the Court finds that equitable tolling is not appropriate because there is no indication of any misconduct by Defendants and Plaintiff did not exercise due diligence in pursuing her claims. *See Harcum v. Dotson*, 2025 WL 1181291, at *5 (E.D. Va. Apr. 23, 2025) (agreeing with the Second Circuit that a plaintiff must exercise due diligence in pursuing their claims to be entitled to equitable tolling). Plaintiff alleges that she only attempted to contact her attorney once when she first received her right-to-sue letter, and, after failing to reach him, waited until just before the deadline to try again. Plaintiff does not allege that she attempted to follow up with her attorney or that she took any other action to pursue her claims at any other point during the intervening 83 days. Although, after learning of

her former attorney's passing, Plaintiff reports that she promptly attempted to file a motion with the Court, after learning that she needed to first file a complaint, Plaintiff appears to have waited nearly a month before taking any further action, and, even then, Plaintiff did not ultimately file her Complaint for several more weeks.  Although Plaintiff reports that she was hesitant to file her Complaint during the federal government shutdown, this is not a sufficient basis for equitable tolling where the Court was fully operational during that entire period, and Plaintiff did ultimately successfully file her Complaint during that period.  *See Castillo v. Johnson*, 2015 WL 11109491 (E.D. Va. Feb. 24, 2015), *aff'd*, 625 F. App'x 204 (4th Cir. 2015)) (holding that equitable tolling was not appropriate due to a government shutdown).  Accordingly, the Court finds that this action was not timely filed, and the Complaint will be dismissed on that basis.  Nonetheless, the Court also analyzes whether Plaintiff has stated a claim.

### B. Failure to State a Claim

Defendants also move to dismiss based on failure to state a claim.  Dkt. 21 at 8–14.  The Court analyzes each claim.

### i. Defamation

As an initial matter, Plaintiff's Amended Complaint references "[d]efamation of [c]haracter."  Dkt. 13-1 at 5.  To the extent that Plaintiff asserts a common law tort claim for defamation, the Civil Service Reform Act ("CRSA"), 5 U.S.C. § 1201 *et seq.*, bars her from doing so.  *See Gordon v. Gutierrez*, 2006 WL 3760134, at *2 (E.D. Va. Dec. 14, 2006) ("[T]he Civil Service Reform Act provides the exclusive remedy for employment-related tort claims [of a federal employee]" (internal citation omitted)), *aff'd*, 250 F. App'x 561 (4th Cir. 2007); *Hall v. Clinton*, 234 F.3d 202, 203–06 (4th Cir. 2000) (holding that CSRA operates "to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship").  Moreover, in

9

Plaintiff's Corrected Opposition, she acknowledges that she cannot bring a defamation claim. Dkt. 27-3. Accordingly, because any tort claim Plaintiff might bring here arises in connection with her federal employment, Plaintiff is precluded from pursuing a common law tort claim, and this claim will be dismissed.

### ii. Hostile Work Environment[4]

To state a hostile work environment claim, Plaintiff must allege sufficient facts to show that the alleged conduct was: (1) unwelcome; (2) based on a protected characteristic; (3) sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) imputable to her employer. *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015).[5] Stated differently, a plaintiff must plausibly plead that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). There is no precise formula for determining whether a work environment is "abusive" or "hostile"; such a determination can be made "only by looking at all the circumstances." *Id.* at 23.

In this case, Plaintiff's allegations are that she was (1) singled out and embarrassed during a mandatory orientation exercise by an unnamed facilitator, (2) that Defendant Gottfried made disparaging comments about her age during the first day of legal instruction, and (3) that Defendant

---

[4] The Court interprets Plaintiff's harassment claim to be part of Plaintiff's hostile work environment claim.

[5] The Fourth Circuit has "assumed, without deciding, that a hostile work environment claim is generally cognizable under the ADEA for plaintiffs age forty or older." *Baqir v. Principi*, 434 F.3d 733, 746 n.14 (4th Cir. 2006).

Gottfried later accused her of cheating and lying, and subjected her to a suitability review leading to her dismissal from the training program. The Fourth Circuit has determined that "[s]imple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (2008). The Fourth Circuit has found that the use of racial slurs constitute such isolated, serious comments that could rise to meet this high bar. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015).

Here, although objectionable, Defendant Gottfried's comment referring to Plaintiff as a "tired, worn out, beaten down, old woman" does not rise to the same level, nor does the orientation exercise. *See Dumbaugh v. Univ. of Richmond*, 2019 WL 4307872, at *3 (E.D. Va. Sep. 11, 2019) (holding offensive and insulting comments, unfair and public criticism, and reassignment of tasks without telling employee failed to meet the severe and pervasive element); *McNeal v. Montgomery Cnty., Md.*, 307 F. App'x 766, 776 (4th Cir. 2009) (supervisor's "comments about [plaintiff's] race and appearance, combined with her scrutiny of his sick leave and accusations of theft" not severe or pervasive); *Roesinger v. Pohanka of Salisbury, Inc.*, 2024 WL 701776, at *3 (4th Cir. Feb. 21, 2024) ("[A] boss who plays favorites and criticizes one's work, colleagues who give the cold shoulder, and 'the sporadic use of abusive language' are 'ordinary tribulations of the workplace[.]'" (citation omitted)); *Engler v. Harris Corp.*, 2012 WL 3745710, at *1, *7 (D. Md. Aug. 28, 2012) (dismissing hostile work environment claim when White female plaintiff alleged that she was excluded from meetings, had information withheld from her, was treated with "disrespect and contempt" and "did not receive the same administrative assistance as other similarly situated male managers"). And the allegations regarding accusations of cheating, the suitability review, and the email regarding the circumstances of the end of her employment are

11

similarly insufficient.[6]  *See, e.g.*, *Seabrook v. Driscoll*, 148 F.4th 264, 272 (4th Cir. 2025) (affirming dismissal when plaintiff alleged employer undermined her supervisory authority, investigated her without first informing her about the complaints against her, suspended her for fourteen days, escorted her from the building, and disclosed her suspension to others); *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (affirming dismissal when plaintiff alleged her employer investigated her unjustly); *Short v. Berryhill*, 2019 WL 4643806, at *17 (D. Md. Sep. 24, 2019) (holding that placement on a performance plan, repeated criticism of plaintiff's performance, a supervisor's refusal to answer questions verbally, and a "series of aggressive emails" did not amount to hostile work environment).  The alleged incidents here are "isolated or scattered," which "is not pervasive enough to state a claim for hostile work environment." *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018); *cf. Jennings v. Univ. of N.C.*, 482 F.3d 686, 697–98 (4th Cir. 2007) (holding that harassing conduct was sufficiently pervasive to state a hostile work environment claim where the conduct was "persistent" and took place "almost every day or every other day").  Accordingly, Plaintiff fails to state a claim for hostile work environment, and this claim will be dismissed.

### iii. Constructive Discharge

Plaintiff's remaining claim centers around her "termination from employment."  Although Plaintiff claims she was terminated in her Amended Complaint, she attaches several exhibits that show she retired; thus, she can only recover if she can establish constructive discharge.  *See, e.g.*, Dkt. 13-1 at 47.  To establish constructive discharge, Plaintiff must show that (1) her working conditions became so intolerable that a reasonable person in her position would have felt

---

[6] Plaintiff cites Ex. 3 but it appears that this email only went to a few people—not the 75 she claims.  Regardless, the incident alleged does not rise to the level of severe or pervasive.

compelled to resign, and (2) that she actually resigned. *See Perkins*, 936 F.3d at 211–12 (citing *Green v. Brennan*, 578 U.S. 547, 555 (2016)).

A showing of intolerability requires "something more" than the severe or pervasive conduct that suffices for a hostile work environment claim. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004)). "Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign," but rather, "whether a reasonable person in the employee's position would have felt *compelled* to resign." *Perkins*, 936 F.3d at 211–12 (emphasis in original) (citations omitted). "[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (internal quotation marks omitted) (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)). The frequency of the alleged conduct is also relevant. "Continuous conduct" is more likely to establish intolerability, while "isolated or infrequent conduct" is less likely to establish intolerability. *Evans*, 936 F.3d at 193.

Here, because Plaintiff has failed to establish that her circumstances were severe or pervasive, she likewise cannot establish that her circumstances were intolerable. *See Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) (recognizing that the "'intolerability' standard governing constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims"). Moreover, Plaintiff likewise fails to establish intolerability because she acknowledges that her retirement decision was motivated by financial considerations. Dkt. 13-1 at 47. Plaintiff stated that she "consider[ed] [her]

13

options" and "felt compelled to retire from the FBI, as [it] was the only option that would allow [her] to receive a monthly income." *Id.* Consequently, this claim will also be dismissed.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

ORDERED that Defendant's Motion to Dismiss (Dkt. 20) is GRANTED; and it is

FURTHER ORDERED that, because Plaintiff has already been granted leave to amend in this matter, and because further amendment appears futile, Plaintiff's Amended Complaint (Dkt. 13-1) is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Plaintiff's Renewed Motion to Toll the Statute of Limitations (Dkt. 9) is DENIED; and it is

FURTHER ORDERED that Plaintiff's Renewed Motion for Extension of Time to Retain Counsel (Dkt. 10) is DENIED because Plaintiff does not identify any specific deadline that needs to be extended to allow Plaintiff time to retain counsel. To the extent that Plaintiff may be confused about whether she may seek and retain counsel, Plaintiff is free to do so at any time; and it is

FURTHER ORDERED that Plaintiff's Motion for Leave to File Corrected Response (Dkt. 27) is GRANTED, and Plaintiff's Proposed Corrected Response (Dkt. 27-3) is DEEMED filed; and it is

FURTHER ORDERED that Defendants' request for leave to file an amended reply brief (Dkt. 29) is DENIED AS MOOT.

The Clerk is directed to send a copy of this Order to *pro se* Plaintiff Orlander Lawson at her address of record and to place this matter among the ended causes.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 60 days of the date of entry of this Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order that Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals.  Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

It is SO ORDERED.

Alexandria, Virginia
July 27, 2026

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge

15